IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ERICA L. WITTROCK,<br><br>              Plaintiff,<br><br>     v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>              Defendant. | 4:25CV3050<br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff Erica L. Wittrock ("Wittrock") seeks judicial review of the final decision of defendant Frank Bisignano, Commissioner of Social Security ("Commissioner"), denying her claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Now before the Court are Wittrock's Motion for an Order Reversing the Commissioner's Decision (Filing No. 12) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 14). For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

I.   **BACKGROUND**

Born in 1982, Wittrock reportedly has "only ever known work," starting with her first babysitting job at eight years old. She continued to work after graduating high school. Just 37 years old on her alleged disability onset date of December 15, 2019, her past relevant work includes time as a setup operator at a manufacturing plant. In that role, she ran a packaging line for diabetic syringes, ensuring the packaging machine kept running. She left that job to care for her daughter.

On February 14, 2023, Wittrock applied for federal disability benefits and supplemental security income, alleging she was unable to work "because of PTSD; anxiety;

depression; agoraphobia; OCD; UTCD; chronic pain; [and] muscle spasms" (Filing No. 5-4). On reconsideration, she also reported issues "with being overly stimulated, memory and disassociation" and undiagnosed stomach issues. The Social Security Administration ("SSA") denied her claims initially and on reconsideration.

Wittrock requested a hearing, which an SSA administrative law judge ("ALJ") held by telephone on July 18, 2024 (Filing No. 5-2). At the start of the hearing, the ALJ confirmed Wittrock (1) understood her right to representation and (2) wanted to proceed without a representative. The ALJ also asked whether Wittrock "had an opportunity to read [her] file." She responded that she was not able to open the CD she received from SSA because she did not have a computer but stated she knew what had previously been discussed in her case. Concluding Wittrock was "generally aware of" the correspondence, medical records, and other information the CD contained, the ALJ admitted into evidence certain pre-marked exhibits from her file.

At the hearing, the ALJ questioned Wittrock under oath about her work history, symptoms, medications, surgical history, activities, and limitations. He also took sworn testimony from a vocational expert ("VE") based in part on Wittrock's answers. Wittrock did not ask the VE any questions.

About three weeks after the hearing, the ALJ denied Wittrock's claims, concluding she was not disabled under the Act. Wittrock appealed, but the Appeals Council found no reason to change the ALJ's decision (Filing No. 5-2). By denying review, the Appeals Council made "the ALJ's decision the final decision of the Commissioner." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024).

Wittrock now seeks judicial review of that decision. *See* 42 U.S.C. § 405(g); *Smith v. Berryhill*, 587 U.S. 471, 478, 480-81 (2019). As she sees it, "the ALJ's decision is marred by legal error and is not supported by substantial evidence, meriting reversal or remand" (Filing No. 12-1). In particular, she faults the ALJ for denying her due-process

rights, failing to properly address the paragraph C criteria for mental-health disorders, and providing an unsupported residual functional capacity ("RFC").[1]

## II.   DISCUSSION

### A.   Standard of Review

In reviewing the Commissioner's final decision under § 405(g), the Court neither reweighs the evidence, *Baldwin*, 349 F.3d at 555, nor retries the contested issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)).

"The phrase 'substantial evidence' is a 'term of art' used" to describe how the Court reviews an ALJ's factfinding. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). Despite its weighty name, its evidentiary threshold "is not high." *Id.* (noting the Supreme Court has famously described it as "more than a mere scintilla" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))); *accord Ross*, 92 F.4th at 778.

"Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)); *accord Biestek*, 587 U.S. at 103. The Court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross*, 92 F.4th at 778 (quoting *Kraus*, 988 F.3d at 1024).

---

[1] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). It is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

A decision does not fall outside the zone merely because the Court "might have reached a different conclusion if" it was initially finding the facts. *Id.*

In deciding whether substantial evidence supports the Commissioner's final decision, the Court must "consider evidence that both supports" it and evidence that detracts from it. *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023). "If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions." *Ross*, 92 F.4th at 778 (quoting *Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019)).

### B.   Eligibility for Benefits

To qualify for disability benefits and supplemental security income, Wittrock must qualify as disabled under the Act. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).

A claimant's disability, not just the impairment must "have existed or be expected to exist for twelve months." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007) (unpublished per curiam) (citing *Barnhart v. Walton*, 535 U.S. 212, 215 (2002)). Wittrock is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### C.   The Five-Step Process

The Act's implementing regulations prescribe "a five-step process to determine whether a claimant is disabled." *Montgomery v. O'Malley*, 122 F.4th 1059, 1063 (8th Cir.

2024); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).  First, the ALJ ensures the claimant has not engaged in "substantial gainful activity," which would bar her from being considered disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).  If she hasn't, the ALJ moves to step two to evaluate "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

At step three, the ALJ "determines based on the medical evidence whether the severe impairments meet or equal the criteria of a 'listed impairment,' which is presumed to be disabling."  *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see also* 20 C.F.R. pt. 404, Subpt. P, App. 1.  If the claimant has such an impairment that meets the duration requirement, she is considered disabled, regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

On the other hand, if the claimant's impairment is severe but does not meet or equal one of the listed impairments, the ALJ moves to step four to decide whether she retains the RFC to perform her past relevant work.  *See Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i).   If so, she is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given her

age, education, and work experience.[2] *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can adjust to other work, she is not disabled; if she can't and meets the duration requirement, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Following that process in this case, the ALJ determined Wittrock had "not engaged in substantial gainful activity since" her alleged onset date of December 15, 2019. The ALJ then determined Wittrock had "the following severe impairments: obesity, depressive disorder, anxiety disorder, PTSD, and personality disorder." He further found evidence of degenerative disc disease, obstructive sleep apnea, asthma, a ganglion toe cyst, and some minor or mild multilevel facet arthrosis of the lumbar spine. Although he found those impairments were not severe largely based Wittrock's treatment history, he did account for them in determining her RFC.

At step three, the ALJ concluded Wittrock did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." In particular, he reviewed 12.04, 12.06, 12.08, and 12.15 and noted that Wittrock's obesity—though not a listed impairment—could impact her relevant symptoms.

In finding Wittrock's mental impairments did "not meet or medically equal the criteria of listings 12.04, 12,06, 12.08, and 12.15," the ALJ "considered whether the 'paragraph B' criteria or 'paragraph C' criteria [were] satisfied." Based in part on Wittrock's testimony about her regular activities, the ALJ found moderate limitations in (1) "understanding, remembering, or applying information," (2) "interacting with others,"

---

[2] "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

(3) "concentrating, persisting, or maintaining pace," and (4) "adapting or managing oneself."

As to "paragraph C," the ALJ decided "the evidence failed to establish the presence of [those criteria] because the record d[id] not establish that [Wittrock] ha[d] only marginal adjustment, that is, a minimal capacity to adapt to change in [her] environment or to demands that [we]re not already part of her daily life." He further noted that "no State agency psychological consultant concluded that a mental listing [was] medically equaled."

Based on his "careful consideration of the entire record," the ALJ found Wittrock had the RFC to perform light work with some limitations. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). More specifically, he determined she could "complete simple tasks in jobs with no more than occasional changes in the work setting" and could "have no contact with the general public and no more than occasional contact with co-workers."

Although the ALJ found Wittrock was unable to perform her past relevant work, he decided she could—given her age, education, work experience, and RFC—perform other "jobs that exist in significant numbers in the national economy." Such jobs include photocopy machine operator, marker, and mail clerk. In light of that conclusion, the ALJ found Wittrock was not disabled under the Act.

    D.    **Issues on Review**
          1.    **Due Process**

Wittrock first argues the ALJ failed to provide her "a full and fair hearing because he ignored black letter agency policy designed to ensure that [she] was aware of the issues in her case, the evidence in her file, and her right to representation, resulting in woefully inadequate development of [her] testimony." *See Passmore v. Astrue*, 533 F.3d 658, 663 (8th Cir. 2008) (footnote omitted) ("Procedural due process under the Fifth Amendment requires that disability claimants be provided a 'full and fair hearing.'" (quoting *Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008))). In particular, she faults the ALJ for (1) failing

to properly determine if she "had been adequately advised about her right to representation," (2) failing "to confirm that she was capable of making an informed choice on her right to representation," (3) neglecting "to outline the issues in the hearing," (4) "simply ignor[ing] that she was unable to examine the exhibits in her file before her hearing," (5) failing "to follow agency policy regarding the" VE's testimony, and (6) inadequately exploring her "barriers to treatment." As Wittrock sees it, the ALJ "lazily and arbitrarily ignored" Wittrock's procedural protections and "bulldozed through" the hearing "as quickly as possible, regardless of the agency's own regulatory guidance and issues of fundamental fairness." She contends the ALJ's "rushed" and "careless" approach to the hearing did not satisfy his affirmative duty to develop the record, especially given the fact that she did not have counsel at the hearing. *See Grindley*, 9 F.4th at 629.

The Commissioner does not deny that Wittrock was entitled to a full and fair hearing of her claims. He maintains she got one. In addition to reiterating the ALJ's discussion of Wittrock's rights and claims with her at the hearing, the Commissioner also aptly notes she received thorough, written notice months before the hearing that provided "information regarding representation, submitting evidence, the issues to be addressed, and the hearing process." He suggests she made an informed choice as to how and the degree to which she wanted to exercise all of her rights.

As to Wittrock's barriers to treatment, the Commissioner asserts "the ALJ inquired about [her] treatment measures and what she did during the day" as well as "places she regularly went and reasons why she stopped going to therapy regularly." Finally, the Commissioner emphasizes that Wittrock did have counsel before and after the hearing and that her decision not to have counsel at the hearing did not alter her burden to prove her disability or require the ALJ to act as her substitute counsel. *See Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) ("[T]the fact that [the plaintiff] appeared pro se does not relieve him of the burden to establish disability."); *Clark v. Shalala*, 28 F.3d 828, 830-31

8

(8th Cir. 1994) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.").

In deciding "whether the process afforded" to Wittrock "is sufficient under the due process clause," the Court must balance her private interest, "the risk of an erroneous deprivation of such interest through the procedures used, [] the probable value, if any, of additional or substitute procedural safeguards," and the SSA's "interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). According to Wittrock, "the risk of erroneous deprivation of [her] interest and the ALJ's burden was low" because "[t]he ALJ merely had to follow the" SSA's own policies.

Although the Court agrees with Wittrock that the SSA proceedings were not perfect (they rarely are), it does not agree that the purported deficiencies she identifies denied her a full and fair hearing under the Act. *See Kendrick v. Shalala*, 998 F.2d 455, 456-57 (7th Cir. 1993) (observing no record is ever "complete" because "one may always" do more). To reduce the risk of error, protect claimant rights, and ensure fairness, the SSA's extensive policies and procedures build in certain safeguards and redundancies that play out differently in different cases. *See* 42 U.S.C. § 405(a) (giving the Commissioner "full power and authority to make rules and regulations and to establish procedures . . . which are necessary or appropriate to carry out" the provisions of the Act and to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits"); *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (remarking that the social-security system's "administrative structure and procedures, with essential determinations numbering into the millions, are of a size and extent difficult to comprehend" yet still must be both functional and fair).

"Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved." *Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (quoting *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997)). Wittrock largely focuses on what she sees as the ALJ's inexcusable failures to follow SSA policy at the hearing. But while those alleged failures may be relevant to determining whether the ALJ did his part in providing due process, they are not necessarily determinative of the core constitutional issue she raises. *See id.*; *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (requiring a disability claimant to prove the alleged lack of due process actually prejudiced her); *Hepp*, 511 F.3d at 805 ("[D]ue process is not violated in social security disability hearings when the claimant fails to exercise the procedural safeguards that would have addressed his concerns."). Indeed, Wittrock aptly acknowledges "failing to follow agency policy is not necessarily grounds for appeal on its own." Nor is it here.

Reasonable minds can differ as to whether an ALJ has taken sufficient steps in particular circumstances to adequately develop the record and strike the right balance between competing interests, including the frequent tradeoff between fastidiousness and efficiency. *See Mathews*, 424 U.S. at 335; *Kendrick*, 998 F.2d at 457 ("Concern for the need to get on with today's cases today and reach tomorrow's cases tomorrow, rather than next month, suggests that the federal judiciary accept reasonable assessments by administrative officials about how much evidence is enough."). "Under the *Eldridge* balancing test," Wittrock has a vested interest not in a perfect hearing but "in a fair determination of [her] qualification for disability benefits." *Hepp*, 511 F.3d at 805. Based on the administrative record as a whole, the Court finds the Commissioner provided that fair determination here. *See*, *e.g.*, *Clark*, 28 F.3d at 830-31 (concluding "the ALJ satisfactorily discharged his" duty "to develop a reasonably correct record"); *Wilburn*, 626 F.3d at 1003; *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (agreeing the "appellant's hearing was less than totally satisfactory" but finding "no showing of prejudice or unfairness resulting from appellant's lack of counsel or the abbreviated

10

hearing" and concluding "[t]he assertion that appellant might have benefited from a more extensive hearing [wa]s pure speculation").

### 2. Failure to Properly Address Paragraph C

Wittrock next contends that "[t]he ALJ failed to properly address the C criteria." She focuses on what she sees as his failure to clearly explain why she "did not meet the 'paragraph C' criteria of Listings 12.04, 12.06, 12.08, and 12.15," which "is a component of the listing analysis for certain mental disorders." Noting that "[t]he regulations go on to describe[] sections C1 and C2 in detail," she mainly faults the ALJ for not being more specific. In her view, the ALJ did "not address this issue in any meaningful way nor cite any evidence in the medical record for [his] conclusion."

The Commissioner contends Wittrock "is mistaken." As he sees it, the ALJ not only specifically addressed the "paragraph C criteria" but also sufficiently articulated his reasons for his findings under Social Security Ruling 17-2p, *Titles II & XVI: Evidence Needed By Adjudicators At the Hearings and Appeals Council Levels of the Administrative Review Process To Make Findings About Medical Equivalence*, 2017 WL 3928306, at *4 (March 27, 2017). The Commissioner further argues the evidence the ALJ examined with respect to Wittrock's alleged mental impairments fully supports his conclusions.

In reply, Wittrock rejects the Commissioner's purported effort "to cobble together their own *post hoc* explanation in substitution for the ALJ's lack of articulation." *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (holding "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"). She suggests the Commissioner's misguided and misdirected response is a red herring.

After careful review, the Court is satisfied the ALJ both reasonably analyzed the paragraph C criteria under the circumstances and adequately stated his reasons for concluding the evidence in this case "fails to establish the presence of the 'paragraph C'

11

criteria because the record does not establish that the claim has only marginal adjustment, that is, a minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *See Grindley*, 9 F.4th at 631 ("An ALJ's reasoning need only be 'clear enough to allow for appropriate judicial review.'" (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019))). Again, the ALJ could have said more, but "brevity is not reversible error." *Id.* The Eighth Circuit "has consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)).

Wittrock points to other evidence she says the ALJ ignored. But an ALJ need not expressly address every piece of contrary evidence to avoid reversal or remand. *See*, *e.g.*, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (explaining "an ALJ is not required to discuss every piece of evidence submitted"); *cf. Vance*, 860 F.3d at 1118 (stating that "an ALJ's failure to adequately explain his factual findings is" generally "not a sufficient reason" to set it aside (quoting *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008))).

### 3.    Substantial Evidence

That brings us to Wittrock's final argument—that her RFC "was not supported by substantial evidence." According to Wittrock, "the ALJ failed to fulfill his duty to fully and fairly develop the facts and arrived at an RFC that was unsupported by and contrary to every medical opinion in the record." She argues his rejection of "the majority of the State agency consultants' assessed limitations" was "nonsensical" and asserts he failed to "build a logical bridge between the evidence and [Wittrock's] RFC." In addition, Wittrock contends the ALJ failed to (1) provide needed clarity regarding her "ability to respond to direct supervision," (2) "account for [her] moderate deficits in concentration, persistence, or pace," and (3) address her agoraphobia. In the end, Wittrock contends her hearing in

general and the ALJ's RFC assessment in particular were "results-oriented" to deny her benefits "rather than grounded in substantial evidence." The Court disagrees.

In reviewing Wittrock's RFC, the Court must "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Wittrock concedes as much. Yet, at times, she drifts into essentially faulting the ALJ for failing to do the latter.

To be sure, Wittrock points to evidence that reasonably could support a different assessment. *See Grindley*, 9 F.4th at 627. But again, that does not require reversal. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) ("[W]e will not reverse the Commissioner's decision merely because we find that substantial evidence exists in the record that would have supported a contrary outcome." (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021))); *Ross*, 92 F.4th at 778 (requiring the Court to affirm the denial of benefits if the Commissioner chooses one of two inconsistent conclusions supported by the record).

The Court has carefully considered Wittrock's various "objections to the ALJ's analysis, but none of them convince [me] that the ALJ's RFC determination was not supported by substantial evidence." *McCoy*, 648 F.3d at 614. Whatever its flaws, the ALJ's decision does not fall "outside the available zone of choice" and must be affirmed. *Ross*, 92 F.4th at 778 (quoting *Kraus*, 988 F.3d at 1024); *see also Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ."); *McCoy*, 648 F.3d at 615 (seeing no reason to remand a decision to require an ALJ to make an implicit finding about the claimant's limitations explicit).

### III. CONCLUSION

Having thoroughly reviewed the administrative record in this case and the parties' respective submissions, the Court finds the Commissioner's denial of Wittrock's

13

application for disability benefits and supplemental security income is supported by substantial evidence on the record as a whole. Accordingly,

IT IS ORDERED:

1. Plaintiff Erica L. Wittrock's Motion for an Order Reversing the Commissioner's Decision (Filing No. 12) is denied.
2. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 14) is granted, and his decision to deny benefits is affirmed.
3. Wittrock's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 3rd day of September 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge